536 F.2d 580
 In the Matter of the ESTATE of Dorothy D. BUCKLEY, Deceased.
Appeal of Ethel PAIEWONSKY, a petitioner,
and
The Roman Catholic Church, Prelature of the Virgin Islands,
Inc., a purported beneficiary.
 No. 76-1078.
 United States Court of Appeals,
Third Circuit.
 Argued April 27, 1976.
Decided June 3, 1976.
 
 John E. Stout, Grunert, Stout, Hymes & Mayer, Charlotte Amalie, St. Thomas, V. I., for appellants.
 George H. T. Dudley, Jr., Edith L. Bornn, Bornn, Finucan & Bruno, Charlotte Amalie, St. Thomas, V. I., for appellee.
 Before VAN DUSEN, ADAMS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This appeal presents, in effect, a conundrum: When is a holographic will not a holographic will?
 
 I.
 
 2
 Dorothy Davenport Buckley died on October 7, 1975. She left two purported wills. One, executed on March 29, 1972, gave her estate to a variety of charitable institutions. It was typewritten, dated, and signed by Mrs. Buckley and by witnesses, and therefore complied with 15 V.I.C. § 13. The other document was executed on June 21, 1975. It, too, left her estate to charity. This second will was wholly handwritten and, for the purposes of this appeal, we assume that it was in the hand of Mrs. Buckley. It was dated, executed by Mrs. Buckley, and signed as well by five witnesses.
 
 
 3
 Petitions for the administration of each will were filed by the respective executors, and the district court was called upon to resolve the dispute. Assuming authenticity, the district court properly narrowed the issue to the validity of the more recently-executed handwritten will.
 
 
 4
 Since the June 21, 1975 will was "entirely written, dated, and signed by the hand of the testator . . .," the district court found that it was a holograph will.[1] The court then turned to 15 V.I.C. § 8, which provides that
 
 
 5
 No . . . holographic will . . . shall be valid, unless made by a soldier or sailor while in actual military or naval service, or by a mariner while at sea . . ..
 
 
 6
 The will was ineligible for probate, declared the court, since Mrs. Buckley did not satisfy the critical occupational conditions for the validity of a holographic will.
 
 
 7
 The executor and a purported beneficiary under the handwritten document appealed. We reverse.
 
 II.
 
 8
 Although Mrs. Buckley's second will is a holograph in the sense that it was entirely in the handwriting of the testator, it is not subject, by this fact alone, to the provisions of the holographic will section of the Virgin Island Code. That section must be understood and applied in the broader context of the law of decedents' estates.
 
 
 9
 Originally, at the common law, property could be passed at death without the formality of a written and witnessed testament. It was even permissible to probate a last will that had been reduced to writing by a third party, although neither testator nor witnesses had signed the document. Oral or nuncupative wills, recited by witnesses, were also allowed. In time, the possibility of fraud became apparent and, by steps, a variety of formal requirements were imposed in order to prevent the probate of spurious testaments.[2]
 
 
 10
 The Virgin Islands has enacted such provisions in 15 V.I.C. § 13, which requires:
 
 
 11
 Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:
 
 
 12
 (1) It shall be subscribed by the testator at the end of the will.
 
 
 13
 (2) Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.
 
 
 14
 (3) The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament.(4) There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator.
 
 
 15
 At the same time that the requirements for proving wills became more demanding it was understood that the validity of some wills can be established by the facts surrounding their execution, although such wills have not been witnessed. Further, in some situations it might be unreasonably difficult for the testator to satisfy the formal requisites of a will.
 
 
 16
 In view of these circumstances, a number of jurisdictions have provided for an exception to the normal requirements in the case of wills that could reasonably be authenticated without recourse to witnesses and other formalities.[3] In those jurisdictions, an informal will is nonetheless admissible if it is written entirely in the hand of the testator. Such wills are described as "holographic." Presumably, a document which the testator has written by himself represents his own desires and not those of a fraudulent interloper, and the possibility of forgery is reduced since the entire document and not just the signature must be in the testator's hand.
 
 
 17
 Often, as in the Virgin Islands, the privilege of informal testation is reserved to soldiers or sailors on active duty. This is done out of respect for their special situation, which is far removed from legal amenities. The history of this privilege in procinctu dates back at least to the Gallic campaigns of Julius Caesar.[4]
 
 
 18
 The intent of holographic will provisions, then, has been to preserve an exception to the rigors of the Wills Act and to admit to probate documents that are genuine despite their informality. Absent a legislative history to the contrary, we must assume that section 8 of the Virgin Islands Code serves this end to save bona fide testations that do not satisfy the formal rules. The language of section 8 confirms this saving purpose. It defines a holograph as a "will . . . written entirely in the handwriting of the maker even though the same be unattested."
 
 
 19
 Although there are no Virgin Islands cases on this point, our view is supported by authoritative decisions. Under the canons of statutory construction applied to Virgin Islands law by this Court, the contemporary judicial interpretation of statutes of foreign jurisdictions that are adopted in haec verba by the Virgin Islands is assumed to be carried over into the law of the Virgin Islands.[5] In 1957, 15 V.I.C. §§ 8 and 13 were adopted in haec verba from sections 16 and 21 of the former New York Decedents' Estate Law. The New York cases decided prior to 1957 did not apply section 16 to handwritten wills that satisfied the formalities of execution required by Decedents' Estate Law § 21.[6] To the contrary, section 16 was limited in its applicability to wills that did not otherwise satisfy the formal requirements of testation. 15 V.I.C. § 8 is presumed to have the same scope.
 
 
 20
 In this context, it is apparent that the will of Dorothy Buckley, although handwritten by the testator and, thus, literally a holograph, is not a holograph for the purposes of section 8 of Title 15. Assuming that the writing is authentic and the oaths are true, the will meets all the formal requirements imposed by the Virgin Islands.[7] It was subscribed by the testator, who declared the instrument to be her last will and testament, in the presence of at least two attesting witnesses, who then signed the document.
 
 
 21
 A handwritten will that satisfies the formal requirements of 15 V.I.C. § 13 is admissible to probate on that basis. It is not subject to the holographic will provisions of 15 V.I.C. § 8, and it is not to be excluded from probate because it was executed by a person not entitled to the privilege of informal testation.[8]
 
 
 22
 Accordingly, the judgment of the district court will be reversed and the cause will be remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Black's Law Dictionary 1772 (4th ed. 1951)
 
 
 [2]
 2 Page, Wills §§ 19.1-19.3 (1960)
 
 
 [3]
 Id. §§ 20.1-20.2
 
 
 [4]
 See In re Zaiac's Will, 162 Misc. 642, 295 N.Y.S. 286 (Surrogate's Ct., King's Co. 1937), modified, 255 App.Div. 709, 718, 5 N.Y.S.2d 897 (1938). See also A. Watson, The Law of Succession in the Later Roman Republic (1971)
 
 
 [5]
 Berkeley v. West Indies Enterprises, 480 F.2d 1088 (3d Cir. 1973); Paiewonsky v. Paiewonsky, 446 F.2d 178, 8 V.I. 421 (3d Cir. 1971), cert. denied 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972)
 
 
 [6]
 See In re Dodd's Will, 45 N.Y.S.2d 27 (Surrogate's Ct., Delaware Co. 1943), aff'd per curiam, 268 App.Div. 811, 48 N.Y.S.2d 622 (1944), aff'd per curiam, 294 N.Y. 706, 61 N.E.2d 448 (1945); In re Thompson's Will, 181 Misc. 385, 41 N.Y.S.2d 416 (Surrogate's Ct., Westchester Co. 1943). In both cases handwritten wills were admitted to probate, but the courts made no mention of section 16
 
 
 [7]
 15 V.I.C. § 13 (1964)
 
 
 [8]
 See 2 Page, Wills § 20.10 (1960)